ORIGINAL

1   COTKIN, COLLINS & GINSBURG
    A PROFESSIONAL CORPORATION
2   RAPHAEL COTKIN, SBN 35892
    C. EDWARD LANGHAMMER, JR., SBN 100991
3   300 South Grand Avenue, 24th Floor
    Los Angeles, CA 90071-3134
4   Telephone:    (213) 688-9350
    Facsimile:    (213) 688-9351
5   Email:    cel@ccglaw.cc and rxc@ccglaw.cc

6   Attorneys for Defendant,
    HUBERT ARTURO ACEVEDO

7

8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

                    WESTERN DIVISION

11

12  CYNTHIA MARTINEZ,                    Case No. ED CV04-1160 CAS(SGLx)
                                         Hon. Christina A. Snyder
            Plaintiff,
                                         STIPULATION AND ORDER FOR
13                                       FILING THIRD AMENDED
        vs.                              COMPLAINT
14
    DEPARTMENT OF CALIFORNIA             Date: March 27, 2006
15  HIGHWAY PATROL, a division of        Time: 10:00 a.m.
    the BUSINESS,                        Judge: Hon. Christina A. Snyder
16  TRANSPORTATION AND
    HOUSING AGENCY OF THE
17  STATE OF CALIFORNIA, and
    HUBERT ARTURO ACEVEDO,
18
            Defendants.
19

20

21          Plaintiff has filed a motion to amend her complaint, which is set for

22  hearing before this Court at 10:00 a.m. on March 27, 2006. Plaintiff seeks to

23  amend her complaint to assert additional facts regarding her alleged sexual

24  harassment claim against defendant CHP, to delete her claim against defendant

25  Acevedo for alleged invasion of privacy and to add and delete factual allegations

26  (without admission by any defendant as to the accuracy or existence of such

27  allegations) as specifically set forth in the proposed Third Amended Complaint,

28  a true and exact copy of which is attached hereto as marked Exhibit "A".

_____
STIPULATION AND ORDER FOR FILING THIRD AMENDED COMPLAINT

64

1    Based on the foregoing, the parties hereto, by and through their counsel of

2  record, stipulate to the filing of a Third Amended Complaint, a true and exact

3  copy of which is attached hereto as marked Exhibit "A" . The parties respectfully

4  request that the Court accept this Stipulation, and that the Third Amended

5  Answer be deemed filed as of March 1, 2006.

6    In entering into this Stipulation, it is understood that defendants do not

7  waive or otherwise relinquish any defenses to plaintiff's causes of action which

8  defendants might have asserted prior to the filing of the Third Amended

9  Complaint.

10    Upon entry of the Court's order on this Stipulation, and service of said

11  order upon all interested parties, defendants shall have 20 days (plus 3 days for

12  mailing, if service is by mail) within which to file responsive pleading(s) to

13  plaintiff's Third Amended Complaint.

14    IT IS SO STIPULATED.

15

16  Dated: ___3/16/06___

                    Respectfully Submitted,

                    ACKERMANN & TILAJEF

17

18                By _____

19                    CRAIG J. ACKERMANN
                    Attorneys for Plaintiff

20                    CYNTHIA MARTINEZ

21

22

23

24

25

26

27

28

Dated: ___3|16|06___

BILL LOCKYER
Attorney General

JACOB A. APPELSMITH
Senior Assistant Attorney General

CHRIS A. KNUDSEN
Supervising Deputy Attorney General

By _Kathryn Megli_
KATHRYN M. MEGLI
Deputy Attorney General
Attorneys for Defendant,
California Highway Patrol

Dated: _March 16, 2006_

COTKIN, COLLINS & GINSBURG

By_____
C. EDWARD LANGHAMMER, JR.
Attorneys for Defendant
HUBERT ARTURO ACEVEDO

ORDER

Pursuant to parties' stipulation, and good cause appearing leave is hereby granted to file the attached Third Amended Complaint and the foregoing Stipulation is approved as the order of the Court.

Date: _3/20/06_

_Christina A. Snyder_
Hon. Christina Snyder
United States District Judge

1  ACKERMANN & TILAJEF, P.C.
   Craig J. Ackermann (State Bar No. 229832)
2  Chaim J. Woolf (State Bar No. 236957)
   1180 South Beverly Drive, Suite 512
3  Los Angeles, California 90035
   Telephone: (310) 277-0614
4  Facsimile: (310) 277-0635
   E-mail:cja@laborgators.com

5  Counsel for Plaintiff Cynthia Martinez

6

7

8

9                 UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12 CYNTHIA MARTINEZ,            )  Case No. EDCV04-1160 CAS(SGLx)
                                )
13            Plaintiff,        )
                                )  **PLAINTIFF'S THIRD AMENDED**
14 vs.                          )  **COMPLAINT FOR SEXUAL**
                                )  **HARASSMENT IN VIOLATION**
15 DEPARTMENT OF CALIFORNIA     )  **OF TITLE VII AND FEHA,**
   HIGHWAY PATROL, a division of)  **INTENTIONAL INFLICTION**
16 the BUSINESS,                )  **OF EMOTIONAL DISTRESS,**
   TRANSPORTATION               )  **ATTORNEYS' FEES AND COSTS**
17 AND HOUSING AGENCY OF THE    )  **and DEMAND FOR JURY TRIAL**
   STATE OF CALIFORNIA and      )
18 HUBERT ARTURO ACEVEDO,       )
                                )
19            Defendants.       )
                                )
20 ─────────────────────────────)

21

22      Plaintiff **Cynthia Martinez** ("Plaintiff Martinez"), as and for her Third

23 Amended Complaint against Defendants **Department of California Highway**

24 **Patrol**, a division of the **Business, Transportation and Housing Agency of the**

25 **State of California** ("Defendant CHP" or "CHP") and **Hubert Arturo Acevedo**

26 ("Defendant Acevedo") (collectively "Defendants"), respectfully alleges as follows:

27                              -1-
28               PLAINTIFF'S THIRD AMENDED COMPLAINT

**EXHIBIT A**

# I.

## JURISDICTION

1.     This Court has jurisdiction over Plaintiff Martinez's federal claims pursuant to 42 U.S.C. § 2000 et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), and 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over Plaintiff Martinez's state law common law claims against Acevedo pursuant to 28 U.S.C. § 1367(a), because they are so related to the federal claims that they form part of the same case or controversy between Plaintiff Martinez and Defendants and arise out of the same nucleus of operative facts.

# II.

## VENUE

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because all or a substantial part of the events giving rise to the claims in this lawsuit occurred in Los Angeles County  and Plaintiff Martinez is a resident of Riverside, California.

# III.

## INTRODUCTION

3.     Plaintiff Martinez seeks compensatory damages against both Defendants, punitive damages against Defendant Acevedo, and attorneys fees and costs against both Defendants based, among other things, on Defendant Acevedo's unauthorized display and exhibition of sexually explicit  photographs of Plaintiff Martinez to various high-ranking CHP officials and other conduct, and the intentional infliction of emotional distress upon her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), the California Fair Employment and Housing Act, California Government Code, §§ 12900 et seq. ("FEHA"), and California Common law.

## IV.

## THE PARTIES

4.     Plaintiff Martinez is a female resident of the State of California who, since August 2005, has been on a maternity leave from her regular employment as an CHP Officer.

5.     Defendant CHP is a division of the State of California's Business, Transportation and Housing Agency. Defendant CHP is the primary law enforcement agency responsible for providing safety and service to the motoring public throughout California's highway transportation network. Upon information and belief, CHP employs over 10,000 employees, including over 6,000 CHP Officers. Although CHP's headquarters are located at 2555 First Avenue, Sacramento, California 95818, its agent for service is the Attorney General's Office, California Department of Justice, 1300 I St., Ste. 1740, Sacramento, CA 95814.

6.     Defendant Hubert A. Acevedo is a male resident of the State of California who is currently employed as a Deputy Chief for CHP in the Los Angeles Area. Defendant Acevedo works from CHP's office located at 411 North Central Avenue, #410, Glendale, California 91203.

## V.

## STATEMENT OF FACTS

7.     From August 1990 through January 1991, Plaintiff Martinez attended the California Highway Patrol Academy in Sacramento, California. In or around January 1991, Plaintiff Martinez graduated from the CHP Academy and began working for CHP as an Officer.

8.     From January 1991 until August 2005, Plaintiff Martinez has been

-3-
PLAINTIFF'S THIRD AMENDED COMPLAINT

employed as CHP Officer.  Among other things, Plaintiff Martinez has worked field patrol and driven the highways of Santa Ana, East Los Angeles, Rancho Cucamongo, and Riverside.

9.     At all times relevant hereto, Plaintiff Martinez's work performance was satisfactory, if not excellent.  CHP consistently rated Plaintiff Martinez as "meets standards" or "exceeds" ratings on her performance evaluations.

10.    In or around February or March 1994, while attending a tri-annual training course at CHP's Academy, Plaintiff Martinez met and befriended Defendant Acevedo, who was then working as a Sergeant in Sacramento for CHP's Internal Affairs Section.

11.    Defendant Acevedo joined CHP in 1986. Before moving to Sacramento, Defendant Acevedo had worked as an Officer and a Sergeant in East Los Angeles and Baldwin Park. Since 1994, CHP has promoted Defendant Acevedo from Sergeant to Lieutenant in Central Los Angeles and Santa Fe Springs Areas; Captain in charge of the East Los Angeles Area; Assistant Division Commander of the Southern Division; Assistant Chief for the Los Angeles Area; and Deputy Chief. Defendant Acevedo is currently one of the highest-ranking CHP officials in Los Angeles County.

12.    In or around September 1994, the friendship between Plaintiff Martinez and Defendant Acevedo developed into a consensual romantic relationship, which, in or around December 1994, further developed into a consensual sexual relationship.

13.    Beginning in December 1994 and continuing through the spring of 1995, Defendant Acevedo and Plaintiff Martinez engaged in romantic and/or sexual encounters in a hotel room several times per month.  In early 1995, Defendant Acevedo left the Internal Affairs Section and moved to Los Angeles, which facilitated additional encounters with Plaintiff Martinez.

14.    On one occasion, in or around March or April 1995, Defendant Acevedo

-4-

and Plaintiff Martinez spent the day together, went out for dinner, and then rented a hotel room. Defendant Acevedo informed Plaintiff Martinez that he had a Polaroid camera in his car and repeatedly suggested that he take pictures of her in order to have photos of her when they were not together. Defendant Acevedo specifically stated that he wanted sexually explicit photos of Plaintiff Martinez.

15.     Although Plaintiff Martinez was reluctant to allow Defendant Acevedo to take nude photographs of her, Defendant Acevedo talked her into it. In the hotel room, Defendant Acevedo took between six to eight sexually explicit photographs of Plaintiff Martinez.

16.     In or around the Summer of 1995, the relationship between Plaintiff Martinez and Defendant Acevedo ended by mutual agreement.

17.     After their relationship ended, Plaintiff Martinez repeatedly asked Defendant Acevedo to return the sexually explicit photographs he had taken of her so that she could destroy them. However, Defendant Acevedo ignored these requests and failed to return any sexually explicit photographs to Plaintiff Martinez until several years later.

18.     Moreover, Defendant Acevedo did not destroy the sexually explicit photographs of Plaintiff Martinez. Instead, from 1995 through 1999 or 2000, Defendant Acevedo stored the sexually explicit photographs of Plaintiff Martinez in his CHP-issued vehicle.

19.     At all times relevant hereto, Plaintiff Martinez never consented to Defendant Acevedo's storage of sexually explicit photographs of her in CHP vehicles.

20.     From 1996 through 2000, Defendant Acevedo showed, displayed and/or exposed some or all of the sexually explicit photographs of Plaintiff Martinez to various high-ranking CHP officials, including, but not limited to, Captain (then

1  Sergeant) Jim Abele ("Abele") and Captain (then Lieutenant) Dan Bower. Some or

2  all of the unauthorized exposure of sexually explicit photographs of Plaintiff

3  Martinez was done within the course and scope of Defendant Acevedo's duties as a

4  CHP officer, on CHP premises, and during working hours.

5       21.    In or around 1996, for example, Defendant Acevedo showed, displayed

6  and/or exposed some or all of the sexually explicit  photographs he had taken of

7  Plaintiff Martinez to CHP Captain (then Sergeant) Jim Abele ("Abele").  Although

8  Defendant Acevedo instructed Abele not to tell anyone about the sexually explicit

9  photographs, Abele ignored Defendant Acevedo's request, and spoke to several other

10  CHP employees (but not Plaintiff Martinez) about the sexually explicit photographs

11  of Plaintiff Martinez.

12       22.    Neither Captain Abele, nor any of the CHP employees with whom

13  Captain Abele spoke about the sexually explicit photographs of Plaintiff Martinez,

14  informed Defendant Acevedo that his (Defendant Acevedo's) conduct in exposing the

15  sexually explicit  photographs of Plaintiff Martinez was inappropriate, constituted

16  sexually harassing conduct, violated CHP's anti-harassment policy and/or state or

17  federal law, and would cause Martinez, if she learned about the exhibition, to

18  experience emotional distress.  CHP's sexual harassment policy states explicitly that

19  the display of sexually explicit photographs constitutes sexually harassing conduct.

20       23.    Neither Captain Ablele, nor any of the other employees who were aware

21  of the sexually explicit photographs of Plaintiff Martinez, reported Defendant

22  Acevedo's sexual misconduct to CHP's Internal Affairs Section, CHP's EEO Unit,

23  their superior officers and/or to Plaintiff Martinez.

24       24.    In or around 1997, Defendant Acevedo showed, displayed and/or

25  exposed sexually explicit photographs of Plaintiff Martinez to Captain (then

26  Lieutenant) Dan Bower ("Bower") on property leased by CHP and during working

27

28

hours.

25.  Captain Bower failed to inform Defendant Acevedo that Defendant Acevedo's conduct in exposing the sexually explicit photographs was inappropriate, constituted sexually harassing conduct, or violated CHP's anti-harassment policy and/or state and federal law.  Nor did Captain Bower report Defendant Acevedo's misconduct to CHP's Internal Affairs Section, CHP's EEO Unit, his superior officers and/or Plaintiff Martinez.

26.  At all times relevant hereto, Plaintiff Martinez never consented to, or authorized, Defendant Acevedo's showing, display or exposing of sexually explicit photographs of her.

27.  At all times relevant hereto, Plaintiff Martinez never consented to, or authorized, discussions, conversations and/or remarks regarding sexually explicit photographs of her in the workplace by Defendant Acevedo, Captain Abele, Captain Bower and/or any other CHP employee. To the contrary, such conversations were at all times unwanted, objectively offensive and subjectively highly offensive to her and, to her dismay, continued throughout 2004 and 2005.  Specifically, from April 2005 through August 2005, while Plaintiff Martinez was on active duty, she became aware of many instances of unwanted sexual gossip about her and the photos.

28.  Although several high-ranking CHP officials were aware as early as 1996 and 1997 that Defendant Acevedo had stored sexually explicit photographs of Plaintiff Martinez in CHP vehicles and/or on CHP property, CHP and its employees, including Defendant Acevedo, Captain Ahlele and Captain Bower, intentionally concealed this information from Plaintiff Martinez. Captain Abele's failure to report Defendant Acevedo's misconduct, coupled with his active concealment of the misconduct from Plaintiff Martinez, continued through March 2004.

29.  Although several CHP Captains and other high-ranking CHP officials

PLAINTIFF'S THIRD AMENDED COMPLAINT

1   were aware as early as 1996 and 1997 that Defendant Acevedo had shown, displayed

2   and/or exposed sexually explicit  photographs of Plaintiff Martinez to other CHP

3   employees, CHP and its employees, including Defendant Acevedo, Captain Jim

4   Ablele and Captain Dan Bower, intentionally concealed this information from

5   Plaintiff Martinez.  Defendant Acevedo, Captain Abele and Dan Bower' failure to

6   bring Defendant Acevedo's sexual misconduct to the attention of their superior

7   officers and/or CHP's EEO unit, coupled with their active concealment of this

8   misconduct from Plaintiff Martinez, continued through March 2004.

9       30.    Upon information and belief, Defendant Acevedo showed, displayed

10  and/or exposed sexually explicit  photographs of Plaintiff Martinez to other senior

11  and high-ranking CHP officials from 1996 though at least 2000. However, no one

12  informed Plaintiff Martinez, CHP's Internal Affairs Section or CHP's EEO Unit of

13  Defendant Acevedo's inappropriate activities.

14      31.    Plaintiff Martinez never consented to, or authorized, Defendant Acevedo

15  storage of sexually explicit  photographs of her in his CHP vehicle.  Furthermore,

16  Plaintiff Martinez never consented to, or authorized, Defendant Acevedo's exhibition,

17  display and/or exposure of sexually explicit  photographs of her to any CHP officials

18  or anyone else for that matter.

19      32.    Defendant Acevedo's misconduct in displaying and/or exposing

20  sexually explicit  photographs of Plaintiff Martinez to various CHP employees and

21  senior officials was utterly humiliating to her and caused her to experience severe

22  emotional distress.

23      33.    Despite the fact that Defendant Acevedo violated CHP's EEO

24  regulations, and breached Plaintiff Martinez's trust by exposing sexually explicit

25  photographs of her to other CHP officials, CHP continued to promote Defendant

26  Acevedo to Assistant Division Commander, then to Assistant Chief and, more

27

28

1   recently, to Deputy Chief.

2       34.    In or around January 2004, an assemblywoman in Los Angeles

3   nominated Defendant Acevedo for appointment to the position of CHP Commissioner

4   to replace outgoing Commissioner Dwight Helmick, who had announced he would

5   retire, effective September 15, 2004.

6       35.    Upon information and belief, members of the staff of Governor Arnold

7   Schwarzenegger interviewed Defendant Acevedo in early 2004 for the position of

8   new CHP Commissioner.

9       36.    In or around March 10, 2004, an anonymous letter was sent from

10  "Concerned Women of CHP" to "Secretary Sunne Wright McPeak" of the Business,

11  Transportation and Housing Agency, but addressed to CHP headquarters in

12  Sacramento, where Commissioner Helmick received it. The March 10, 2004 letter

13  stated, among other things, that Defendant Acevedo had (a) sexually harassed

14  numerous female CHP employees; (b) leered, made unwelcome comments and

15  engaged in unwanted physical touching of numerous female CHP employees; ©)

16  exhibited a fully nude Polaroid photograph of Plaintiff Martinez to select personnel

17  within his "inner circle" at CHP facilities; and (d) commented that he could "make

18  some good money placing it [the nude photograph] on the internet." A true and

19  correct copy of the March 10, 2004 letter is annexed to Plaintiff's Second Amended

20  Complaint as Exhibit A and was previously filed under seal in this action.

21      37.    In mid-March 2004, while Plaintiff Martinez was out on maternity leave,

22  CHP's Internal Affairs Section began an investigation into allegations raised in the

23  March 10, 2004 letter. Unfortunately, this investigation only unearthed a small

24  fraction of the misconduct engaged in by Defendant Acevedo and other CHP

25  officials.

26      38.    On or around March 17, 2004, Plaintiff Martinez was informed for the

27
                                    -9-
28                    PLAINTIFF'S THIRD AMENDED COMPLAINT

1   first time by Captain Victoria Corona and Sergeant Stacy French, investigators

2   selected by CHP's Internal Affairs Section to question her, that Defendant Acevedo

3   had shown, displayed and/or exposed on several occasions from 1996 through 2000,

4   some or all of the sexually explicit photographs of Plaintiff Martinez, which were

5   taken in 1995 by then Sergeant Acevedo, to several senior-level and high-ranking

6   CHP employees, including, but not limited to, Captain Jim Ablele and Captain Dan

7   Bower. Plaintiff Martinez was also informed for the first time that Defendant

8   Acevedo had stored sexually explicit photographs of her in his CHP-issued vehicle.

9       39.   Plaintiff Martinez was shocked, horrified and appalled to discover in her

10  March 17, 2004 interview with Captain Victoria Corona and Sergeant Stacy French

11  that Defendant Acevedo had previously exhibited, displayed and/or exposed sexually

12  explicit photographs of her to her colleagues, supervisors, superior officers and/or

13  other CHP employees.

14      40.   Prior to March 17, 2004, Plaintiff Martinez was completely unaware that

15  Defendant Acevedo had ever stored sexually explicit photographs of her in his CHP

16  vehicle.

17      41.   Prior to March 17, 2004, Plaintiff Martinez was completely unaware that

18  Defendant Acevedo had ever exhibited, displayed and/or exposed sexually explicit

19  photographs of her to her colleagues, supervisors, superior officers and/or other CHP

20  officials.

21      42.   CHP's Internal Affairs Section also questioned, among others,

22  Defendant Acevedo, Captain Dan Bower and Captain Jim Abele. Captain Bower and

23  Captain Abele admitted that Defendant Acevedo had exposed sexually explicit

24  photographs of Plaintiff Martinez to them. Defendant Acevedo admitted that he had

25  exposed sexually explicit photographs of Plaintiff Martinez to Captain Jim Abele.

26  As CHP's investigation proceeded, more and more CHP employees were made aware

27

28

1  of the sexually explicit photographs of Martinez, much to Plaintiff Martinez's chagrin

2  and embarrassment.

3      43.    Nevertheless, CHP's Internal Affairs Section's investigation failed to

4  expose the full extent of Defendant Acevedo's sexual misconduct for several reasons.

5  First, several high-ranking CHP officials, including Commissioner (then Deputy

6  Chief) Mike Brown, interfered with CHP's Internal Affairs Section's investigation.

7  Upon information and belief, in 2004, Mike Brown, to whom Defendant Acevedo

8  currently reports, told several important potential witnesses, including Lieutenant

9  Paul Golanski, a close friend of Defendant Acevedo who may also have been exposed

10 to the sexually explicit photographs of Plaintiff Martinez, that he (Paul Golanski) and

11 they did not have to cooperate with the investigation.

12     44.    Furthermore, Assistant Chief Stan Witcher, a high-ranking member of

13 CHP's Internal Affairs Section, took a leave of absence in 2004, because, in part, he

14 felt that various high-ranking officials within CHP had in a misguided attempt to

15 "cover-up" and minimize Defendant Acevedo's wrongdoing and to prevent the

16 wrongdoing of other high-ranking senior CHP officials from coming to light,

17 improperly interfered with, and meddled in, CHP's Internal Affairs Section's

18 investigation into Defendant Acevedo's sexual misconduct in exhibiting sexually

19 explicit photographs of Plaintiff Martinez to other high-ranking CHP officials.

20     45.    Incredibly, CHP did not even bother to inform Plaintiff Martinez (the

21 real victim here) of (a) the status of the investigation, (b) the extent of exposure of

22 sexually explicit  photographs of her, (c) CHP's conclusions following the

23 investigation into Defendant Acevedo's misconduct and/or (d) any disciplinary

24 action(s) taken or contemplated against Defendant Acevedo or other CHP officials.

25     46.    Upon information and belief, several witnesses ma have been intimated

26 into silence and submission during the investigation of this matter based, in part, on

27

28
PLAINTIFF'S THIRD AMENDED COMPLAINT

1   the significant possibility that Defendant Acevedo would be appointed by the

2   Governor to be the new CHP Commissioner.

3        47.    Although its investigation was tainted and incomplete, CHP's Internal

4   Affairs Section nevertheless concluded, among other things, that (a) Defendant

5   Acevedo exposed sexually explicit photographs of Plaintiff Martinez to Captain Jim

6   Abele in 1996; (b) Defendant Acevedo had exposed sexually explicit photographs

7   of Plaintiff Martinez on CHP property and during working hours to Captain Dan

8   Bower in 1997; and ©) Defendant Acevedo, Captain Bower and Captain Abele had

9   repeatedly spoken to other CHP employees about the sexually explicit photographs

10   of Plaintiff Martinez.

11        48.    On or around April 29, 2004, CHP issued a Memorandum of Direction

12   ("MOD") to Defendant Acevedo after CHP concluded that Defendant Acevedo had

13   exhibited, displayed and/or exposed sexually explicit photographs of Plaintiff

14   Martinez to Captain Dan Bower and Captain Jim in 1996 and 1997. A true and

15   correct copy of the April 29, 2004 MOD to Defendant Acevedo is annexed to

16   Plaintiff's Second Amended Complaint as Exhibit B and was previously filed under

17   seal in this action pursuant to court order.[1] CHP's MOD to Defendant Acevedo was

18   woefully inadequate as a remedial measure.

19        49.    On or around April 29, 2004, CHP issued a MOD to Captain Bower

20   based, among other things, on his failure to report Defendant Acevedo's misconduct

21   to CHP's EEO Unit, CHP's Internal Affairs Section and/or to their superior officers.

22   A true and correct copy of the April 29, 2004 MOD to Captain Bower is annexed to

23

24      [1] Significantly, CHP's April 29, 2004 Memorandum of Direction to Defendant Acevedo

25   also states that (a) a female CHP employee complained in 2000 about unwanted leering and
      sexual advances by Defendant Acevedo and (b) Defendant Acevedo had improperly engaged in a

26   sexual relationship with a female CHP subordinate in 1989. *See* Plaintiff's Second Amended
      Complaint, Exhibit B.

27

28                  PLAINTIFF'S THIRD AMENDED COMPLAINT

1  Plaintiff's Second Amended Complaint as Exhibit C, which was previously filed
2  under seal in this action pursuant to court order. CHP's MOD to Dan Bower was
3  woefully inadequate as a remedial measure.

4       50.    On or around April 29, 2004, CHP issued a MOD Captain Abele
5  based, among other things, on his failure to report Defendant Acevedo's misconduct
6  to CHP's EEO Unit, CHP's Internal Affairs Section and/or to their superior officers.
7  A true and correct copy of the April 29, 2004 MOD to Captain Abele is annexed to
8  Plaintiff's Second Amended Complaint as Exhibit D and was previously filed under
9  seal in this action pursuant to court order. CHP's MOD to Abele was woefully
10  inadequate as a remedial measure.

11       51.    Upon information and belief, CHP also issued a Memorandum of
12  Direction to Assistant Chief Chris Madigan in 2004 for certain inappropriate acts or
13  omissions related to his interrogation by CHP Internal Affairs Section during the
14  March 2004 investigation into Defendant Acevedo's misconduct.

15       52.    While at CHP, Defendant Acevedo has repeatedly engaged in behavior
16  in violation of CHP policies. For instance, he has engaged in several sexual
17  relationships with subordinates. In addition, at least two female CHP employees have
18  accused Defendant Acevedo of sexual harassment. CHP has also determined that he
19  exhibited sexually explicit photographs of Plaintiff Martinez and improperly
20  discussed the photographs with other CHP employees. In addition, Defendant
21  Acevedo failed to disclose his behavior to his superior officers and actively concealed
22  it from Plaintiff Martinez through March 2004.

23       53.    Notwithstanding Defendant Acevedo's pattern or practice of improper
24  behavior, CHP has failed to take adequate steps to prevent and correct sexually
25  harassing and sexually inappropriate conduct by Defendant Acevedo. Instead of CHP
26  immediately terminating Assistant Chief Acevedo's employment for, among other

27

28
PLAINTIFF'S THIRD AMENDED COMPLAINT

things, egregious violations of its sexual harassment policy and violations of Plaintiff Martinez's right to privacy, CHP took no significant disciplinary action against Defendant Acevedo, and the Governor of the State of California continued to consider Defendant Acevedo's promotion to the position of Commissioner. Upon information and belief, the Governor continued to treat Defendant Acevedo as a viable candidate to replace the outgoing Commissioner even after CHP issued Memoranda of Direction to Defendant Acevedo, Captain Abele, Captain Bower and Chief Manigan for their misconduct in this matter.

54.    Upon information and belief, CHP did not even require Defendant Acevedo, Captain Abele and/or Captain Bower to attend remedial sexual harassment training following the issuance of Memoranda of Direction to them for, among other things, violations of CHP's sexual harassment policy.

55.    Upon information and belief, from April through August 2005, numerous employees, officers and senior officials within CHP, including Defendant Acevedo, have engaged in unwanted sexual gossip about the sexually explicit photographs of Plaintiff Martinez, which has further contributed to an on-going sexually hostile work environment at CHP for Plaintiff Martinez.

56.    When her maternity leave came to an end in the Summer of 2004, Plaintiff Martinez was forced to take a stress-related leave of absence as a result of the on-going sexually-hostile work environment at CHP, CHP's flawed investigation of this matter and its inadequate discipline of Defendant Acevedo. Plaintiff Martinez's request for a stress-related leave of absence was approved by the State Worker's Insurance Fund.

57.    In April 2005, Plaintiff Martinez returned to active duty working as an Officer in Inland Division and continued working in that capacity until she took a second maternity leave in August 2005. From April through August 2005, Plaintiff

1  Martinez was exposed to and/or been informed about additional sexually harassing

2  acts or conduct. Specifically, between April through August 2005, Plaintiff Martinez

3  was exposed to and informed about the following unwanted and offensive

4  conversations about her:

5            a.    At a dinner party at Deputy Chief Jeff Talbott's ("Talbott") home

6  in February 2004, Jim Abele told Talbott and other CHP management, including

7  Assistant Chief Mike Maples, Assistant Chief Mike Williams, Captain Tom

8  McCreary, and Deputy Chief John Fogerty, that Defendant Acevedo had shown him

9  (Abele) sexually explicit photographs of Plaintiff Martinez;

10            b.    On March 16, 2004, Deputy Chief Fogerty ("Fogerty") told

11  Talbutt about an allegation that nude photographs of Plaintiff Martinez were "being

12  passed around";

13            c.    On March 16, 2004, Bower mentioned to Fogerty and Captain

14  Lynn Jones ("Jones") during a dinner conversation that Defendant Acevedo had

15  shown him (Bower) a stack of "Hustler Style" nude photographs of Plaintiff

16  Martinez, which Defendant Acevedo kept in the trunk of his state-issued vehicle;

17            d.    Bower stated that it is his belief that Acevedo had shown the

18  pictures of Plaintiff Martinez to other CHP employees;

19            e.    Abele had admitted to CHP Internal Affairs Investigators during

20  his interrogation in 2004 that Defendant Acevedo had shown him nude photographs

21  of Plaintiff Martinez;

22            f.    In March 2004, Lieutenant Paul Depaola had a conversation with

23  Jones about the "latest rumor" going around the CHP, which involved Defendant

24  Acevedo and "Playboy" style photos of Plaintiff Martinez;

25            g.    Lieutenant Paul Golanski had stated that Defendant Acevedo told

26  him (Golanski) that Plaintiff Martinez had posed nude for Defendant Acevedo; and

27

28

h.   Bower had shared the story of Defendant Acevedo showing him (Bower) nude photographs of Plaintiff Martinez on numerous occasions with numerous CHP employees.

58.   In addition, in April 2005, Plaintiff Martinez was informed that CHP was holding a meeting of Inland Division and that Abele would be in attendance. When she found out, Plaintiff Martinez informed Talbott that she felt "very uncomfortable" because Abele was going to be at the meeting. Talbott then informed Plaintiff Martinez that she could take the day off and work from home.

59.   In addition, between April 2005 and August 2005 when Plaintiff Martinez returned to work, Plaintiff was forced to continue to work in an environment where numerous CHP employees are aware of Defendant Acevedo's exhibition of the sexually explicit photographs of her. For example, Officer Ray Sanchez approached Plaintiff Martinez in April 2005 and stated, "I can't believe what happened to you-upper management gets away with everything." Also, Plaintiff Martinez was informed by coworker Officer Lyn Peters that, during Plaintiff Martinez's prior maternity leave in 2004, a newspaper article about Defendant Acevedo's exhibition of sexually explicit photographs had been posted in CHP's Riverside office, where Plaintiff Martinez is currently assigned, and that the article contained a description of the female CHP officer in the photographs; and that everyone in the Riverside office had put "two and two together" and figured out that the article was referring to Plaintiff Martinez. When Plaintiff Martinez learned that everyone in her CHP office knew about Defendant Acevedo's exhibition of sexually explicit photographs of her, she felt extremely uncomfortable and stressed; she wanted to leave work.

60.   Finally, in or around July 2005, Plaintiff Martinez came across a website used and viewed by CHP employees and other law enforcement officers called www. goodbadcorrupt.com. The website contained a posting dated June 14, 2005, in which

the author claimed to know both Defendant Acevedo and Plaintiff Martinez. More importantly, the author of the posting falsely stated, among other things, that Plaintiff Martinez "brazenly chased after" and "seduced" Acevedo; that she was "aggressive"; and that she "wanted to take the [sexually explicit] pictures; and that Plaintiff Martinez was "no victim". Similarly, in or around July 2005, Plaintiff Martinez viewed an offensive posting about the explicit photographs of her taken by Defendant Acevedo on another internet website, www.spikehelmick.com. After seeing these postings, Plaintiff Martinez was horrified and offended.

61. Plaintiff Martinez has experienced serious psychological and emotional distress as a result of Defendant Acevedo's and CHP's misconduct in this matter. All the above-described events contributed to Plaintiff Martinez's on-going feelings in 2005 that she was working in a sexually hostile work environment.

62. Assistant Chief Acevedo's conduct with respect to Plaintiff Martinez is not an isolated incident at CHP. Rather, CHP has repeatedly failed to take steps to prevent its male employees, including Defendant Acevedo, from engaging in sexually inappropriate behavior. For example, CHP did not terminate the employment of a Lieutenant who was arrested on several occasions for soliciting prostitution. Although this Lieutenant was demoted for his illegal and sexually inappropriate conduct, CHP subsequently promoted him, thereby signaling that the prevention of sexually inappropriate behavior by CHP employees is not a priority. CHP's failure to terminate the employment of a Lieutenant who solicited prostitution highlights the overall "frat-house" atmosphere at CHP where sexual misconduct is ignored or minimized.

63. In addition, CHP failed to demote or terminate the employment of a Sergeant in Santa Ana who was accused of sexual harassment and stalking of a female officer and subordinate, despite the fact that several witnesses confirmed that

1    the Sergeant had engaged in inappropriate sexual behavior. Ultimately, the female

2    officer who was sexually harassed was forced to take an injury-related retirement.

3        64.    Significantly, CHP Captain Lisa Lorrance (f/k/a Lisa Sowell) lodged a

4    formal complaint of sexual harassment against Defendant Acevedo and CHP in 2000.

5    Upon information and belief, Captain Lorrance also warned current CHP

6    Commissioner Helmick that Defendant Acevedo was a sexual predator in the

7    workplace. Following Captain Lorrance's complaint, as in this case, CHP did not take

8    adequate steps to prevent and correct Defendant Acevedo from engaging in sexually

9    harassing and other inappropriate conduct. Given CHP's repeated failure to take

10   Defendant Acevedo's sexual misconduct seriously, it is hardly surprising that

11   Defendant Acevedo has continued to act with such impunity.

12       65.    On or about April 5, 2004, counsel for Plaintiff Martinez in this matter

13   wrote a demand letter to then Commissioner Dwight Helmick, Defendant Acevedo

14   and Governor Arnold Schwarzenegger describing Plaintiff Martinez's claims against

15   CHP and Defendant Acevedo based on, among other things, Defendant Acevedo's

16   exhibition of sexually explicit photographs of Plaintiff Martinez to other CHP

17   employees and senior officials.

18       66.    Upon information and belief, the Governor of the State of California

19   continued to treat Defendant Acevedo as a viable candidate to replace the outgoing

20   CHP Commissioner even after CHP issued Memoranda of Direction to Defendant

21   Acevedo, Captain Abele and Captain Bower for their misconduct in this matter, after

22   he received the March 10, 2004 letter from "Concerned Women of CHP," and after

23   he received a detailed demand letter from Plaintiff's counsel regarding Defendant

24   Acevedo's exhibition of sexually explicit  photographs of Plaintiff Martinez.

25       67.    CHP acknowledges that Defendant Acevedo exhibited nude

26   photographs of Plaintiff Martinez to other CHP officials.

27

28
                          -18-
            PLAINTIFF'S THIRD AMENDED COMPLAINT

68.     Defendant CHP failed to properly investigate Plaintiff Martinez's sexual harassment complaint in 2004; failed to adequately prevent and correct the sexually hostile work environment to which Plaintiff Martinez was subjected in 2004; and failed in 2004 to discipline adequately CHP employees who exhibited, viewed and/or discussed sexually explicit photographs of Plaintiff Martinez.

69.     In light of the extremely graphic private and sexual facts and images disclosed by Defendant Acevedo to senior officials within CHP and Plaintiff Martinez's serious emotional injuries, Plaintiff Martinez is entitled to a substantial award from Defendants CHP and Acevedo.

70.     All administrative prerequisites to the filing of this proceeding have been satisfied.

71.     On or around May 7, 2004, Claimant Martinez filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") and a "Pre-Complaint Questionnaire" (the "Questionnaire") with the California Department of Fair Employment and Housing ("DFEH") against Defendant CHP alleging, among other things, that she was subjected to sexual harassment by CHP and Defendant Acevedo. Because Plaintiff Martinez asserted claims against a department of the State of California, the EEOC referred Plaintiff Martinez's Title VII Complaint to the Department of Justice ("DOJ") for review and investigation.

72.     On or around May 7, 2004, the DFEH issued a right-to-sue letter to Plaintiff Martinez authorizing her to bring suit against the Department of California Highway Patrol under California's Fair Employment and Housing Act.

73.     On or around June 7, 2004, Claimant Martinez signed and filed a Claim with the State of California Board of Control for, among other things, sexual harassment, invasion of privacy, public disclosure of private facts, and intentional infliction of emotional distress.

74.   On or about June 22, 2004, the Victim Compensation and Government Claims Board Government Claims Branch issued a notice to Claimant Martinez acknowledging receipt of the claim and further indicating that the staff of the Board had recommended that Plaintiff Martinez's claim be resolved through formal legal action. Because more than 45 days elapsed since the State Board of Control received Plaintiff Martinez's claims, her claim was statutorily rejected. Moreover, on or about August 27, 2004, the Board formally rejected Plaintiff Martinez's claim, thereby authorizing Plaintiff Martinez to bring suit.

75.   Similarly, on or around September 3, 2004, the DOJ issued a right-to-sue letter to Plaintiff Martinez authorizing her to file suit against Defendant CHP under Title VII of the Civil Rights Act of 1964. This action was timely filed within ninety days of the issuance of the DOJ's right-to-sue letter and within one year of the issuance of a DFEH right-to-sue letter to Plaintiff Martinez.

76.   Furthermore, on February 9. 2006, Plaintiff again dual-filed with the EEOC and DFEH charges against CHP for the creation of a sexually hostile work environment based on events that occurred between April and August 2005 and/or events that Plaintiff learned about or discovered between April and August 2005 (i.e., after the issuance of her original DFEH and EEOC right-to-sue letters).

77.   On February 13. 2006, the DFEH issued a second right-to-sue letter to Plaintiff Martinez authorizing her once again to bring suit against the Department of California Highway Patrol under California's Fair Employment and Housing Act based on events that occurred between April and August 2005 and/or events that Plaintiff learned about or discovered between April and August 2005.

78.   Because Plaintiff Martinez asserted claims against a department of the State of California, the EEOC once again referred Plaintiff Martinez's Title VII Complaint to the Department of Justice ("DOJ"). On February 23, 2006, the DOJ

1  issued a second right-to-sue letter to Plaintiff Martinez authorizing her to file suit

2  against Defendant CHP under Title VII of the Civil Rights Act of 1964 for her sexual

3  harassment claims against CHP arising from the period of time between April and

4  August 2005.  This Third Amended Complaint was timely filed within ninety days

5  of the issuance of the DOJ's second right-to-sue letter to Plaintiff Martinez and within

6  one year of the issuance of the DFEH's second right-to-sue letter to Plaintiff

7  Martinez.

## VI.

### CAUSES OF ACTION

### AS AND FOR FIRST CAUSE OF ACTION

**Sexually Hostile Work Environment**

**in Violation of Title VII of the Civil Rights Act of 1964**

**(42 U.S.C. § 2000e et seq.)**

**(Against Department of California Highway Patrol)**

15      79.    Plaintiff Martinez hereby incorporates by reference Paragraphs 1

16  through 78 above as if set fully set forth herein.

17      80.    As set forth in paragraphs 1 through 78, Defendant CHP subjected

18  Plaintiff Martinez to a sexually hostile work environment in violation of Title VII.

19      81.    CHP created and fostered a sexually hostile work environment against

20  Plaintiff Martinez which consisted of, among other things, (a) exhibition of nude

21  photographs of her, (b) unwanted discussions about nude photographs of her, (c)

22  failure to adequately prevent and correct sexually harassing behavior; (d) unwanted

23  sexual gossip about her and her body; and (e) sexual harassment, leering, touching

24  and sexual advances toward other female CHP employees.  The sexually hostile work

25  environment at CHP was severe or pervasive.

26      82.    As a direct and proximate result of Defendant CHP's violation of Title

VII, Plaintiff Martinez has suffered severe emotional distress, anguish, and mental and physical pain and suffering.  Therefore, Plaintiff Martinez is entitled to recover compensatory damages for past and future non-pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, costs of therapy, and loss of enjoyment of life to the maximum extent and amount allowed by law.  Plaintiff Martinez seeks relief as set forth below.

## AS AND FOR SECOND CAUSE OF ACTION

### Sexually Hostile Work Environment

### in Violation of California's Fair Employment and Housing Act

### (California Government Code, § 12900 et seq)

### (Against Department of California Highway Patrol)

83.    Plaintiff Martinez hereby incorporates by reference Paragraphs 1 through 82 above as if set fully set forth herein.

84.    As set forth in paragraphs 1 through 82, Defendant CHP subjected Plaintiff Martinez to a sexually hostile work environment in violation of California's Fair Employment and Housing Law.

85.    CHP created and fostered a sexually hostile work environment against Plaintiff Martinez which consisted of, among other things, (a) exhibition of sexually explicit photographs of her, (b) unwanted discussions about sexually explicit photographs of her, (c) failure to adequately prevent and correct sexually harassing behavior in 2004; (d) unwanted sexual gossip; and (e) sexual harassment of other female CHP employees.  The sexually hostile work environment at CHP was and remains severe or pervasive.

86.    Due to Defendant's active concealment of the underlying acts of harassment, Plaintiff Martinez was made aware of the sexually hostile work environment for the first time in or around March 2004.  The sexually hostile work

-22-
PLAINTIFF'S THIRD AMENDED COMPLAINT

1 environment existed through 2004 and in the period from April through August 2005.

2       87.    As a direct and proximate result of Defendant's violations of FEHA,

3 Plaintiff Martinez has suffered emotional distress, anguish, and mental and physical

4 pain and suffering. Therefore, Plaintiff Martinez is entitled to recover compensatory

5 damages for past and future non-pecuniary losses, physical and emotional pain,

6 suffering, inconvenience, mental anguish, costs of therapy, and loss of enjoyment of

7 life to the maximum extent and amount allowed by law. Plaintiff Martinez seeks relief

8 as set forth below.

9 **AS AND FOR THIRD CAUSE OF ACTION**

10 **Intentional Infliction of Emotional Distress**

11 **(California Common Law)**

12 **(Against Defendant Acevedo)**

13       88.    Plaintiff Martinez hereby incorporates by reference Paragraphs 1

14 through 87 above as if set fully set forth herein.

15       89.    Plaintiff Martinez brings claims against Defendant Acevedo for

16 intentional infliction of emotional distress.

17       90.    As set forth in paragraphs 1 through 87, Defendant Acevedo acted

18 intentionally and/or recklessly by, among other things, storing sexually explicit

19 photographs of Plaintiff Martinez in CHP property; exposing sexually explicit

20 photographs of Plaintiff Martinez to other high-ranking CHP officials; speaking

21 about Plaintiff Martinez's private sex life with other CHP officials; and by failing

22 to discipline adequately employees who stored, exposed and/or viewed sexually

23 explicit photographs of Plaintiff Martinez.

24       91.    Defendant Acevedo's above-described conduct was extreme and

25 outrageous and beyond all bounds of decency in a civilized society.

26       92.    Defendant Acevedo's above-described conduct caused Plaintiff

27

28

1   Martinez to experience severe emotional anguish and distress.

2       93.    As a direct and proximate result of Defendant Acevedo' intentional

3   infliction of emotional distress, Plaintiff Martinez has suffered mental anguish and

4   emotional pain and suffering.  Therefore, Plaintiff Martinez is entitled to recover

5   compensatory damages for past and future non-pecuniary losses, emotional pain,

6   suffering, inconvenience, mental anguish, costs of therapy, and loss of enjoyment

7   of life to the maximum extent and amount allowed by law.

8       94.    Defendant Acevedo acted maliciously in inflicting emotional distress

9   on Plaintiff Martinez.  Therefore, Plaintiff Martinez is entitled to recover punitive

10  damages against Defendant Acevedo.

11      95.    Plaintiff Martinez seeks relief as set forth below.

12  ## VI.

13  ## DEMAND FOR JURY TRIAL

14      96.    Plaintiff Martinez hereby demands trial by jury on all her claims to

15  the extent authorized by law.

16  ## VII.

17  ## PRAYER FOR RELIEF

18  WHEREFORE, Plaintiff Martinez requests the following relief:

19      1.    Defendant CHP be found liable for (a) creating and fostering a

20  sexually hostile work environment in violation of Title VII of the Civil Rights Act

21  of 1964 and (b) creating and fostering a sexually hostile work environment in

22  violation of California's Fair Employment and Housing Act;

23      2.    Defendant Acevedo be found liable for subjecting Plaintiff to the

24  intentional infliction of emotional distress;

25      3.    Defendants compensate Plaintiff Martinez for all actual damages

26  caused by their violations of federal and state statutory and/or common law to the

27

28

1  maximum extent and amount allowed for and provided by law;

2        4.    An award of $5 million in compensatory damages against Defendants

3  CHP and Acevedo and in favor of Plaintiff Martinez for Plaintiff Martinez's past

4  and future non-pecuniary losses, physical and emotional pain, suffering,

5  inconvenience, mental anguish, humiliation, costs of therapy, and loss of

6  enjoyment of life;

7        5.    An award against Defendant Acevedo of no less than $1 million in

8  punitive damages for his malicious disregard of Plaintiff Martinez's right to be

9  free from the intentional infliction of emotional distress;

10        6.    An award of reasonable attorneys' fees for all work performed by

11  counsel for Plaintiff Martinez on behalf of Plaintiff Martinez;

12        7.    An award of all costs incurred by Plaintiff Martinez's counsel in

13  litigating this matter; and

14        8.    An award of such other and further relief, at law or in equity, as the

15  Court may deem appropriate, to which Plaintiff Martinez may be justly entitled.

16  Date: February 28, 2006
Los Angeles, California

17

18                    Respectfully submitted,

19                    ACKERMANN & TILAJEF, P.C.
1180 South Beverly Drive, Suite 512

20                    Los Angeles, California 90035
(310) 277-0614 (telephone)

21                    (310) 277-0635 (facsimile)

22

23          By: _____
Craig J. Ackermann (State Bar No. 229832)

24               Chaim J. Woolf (State Bar No. 236957)

25               Attorneys for Plaintiff Cynthia Martinez

26

27                    -25-

28            PLAINTIFF'S THIRD AMENDED COMPLAINT